UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Yusong Gong,

    Plaintiff,

v.	Case No. 16-14516

The University of Michigan, *et al.*,	Sean F. Cox
                                    United States District Court Judge

    Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS

Acting *pro se*, Plaintiff Yusong Gong filed this action on December 28, 2016 against the University of Michigan and three of its employees, asserting Title VII and ADA claims. The matter is currently before the Court on Defendants' Motion to Dismiss, brought under Fed. R. Civ. P. 12(b)(1) and (b)(6). The parties have briefed the issues and the Court concludes that oral argument will not aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided without a hearing. As explained below, the Court shall GRANT THE MOTION IN PART AND DENY IT IN PART. More specifically, the Court: 1) shall deny without prejudice Defendants' challenge based on the Release in a prior federal case filed by Plaintiff because, while Defendants may prevail on that challenge in the context of a motion for summary judgment, they have not established that they can prevail on that challenge in connection with a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6); 2) rules that any ADA claims for monetary damages in this action are barred by Eleventh Amendment immunity, but that to the extent

1

Plaintiff's complaint seeks reinstatement under the ADA, that limited claim is not barred by Eleventh Amendment Immunity; 3) shall dismiss with prejudice Plaintiff's claims against the three individual Defendants because an individual employee/supervisor, who does not otherwise qualify as an "employer" under the statute, may not be personally liable under Title VII or the ADA.

## BACKGROUND

**A.  Plaintiff's Complaint In This Action**

On December 28, 2016, acting *pro se*, Plaintiff Yusong Gong ("Plaintiff") filed this action against the following four Defendants: 1) the University of Michigan; 2) Richard Simon; 3) Michelle Henderson; and 4) Timorthy [sic] Lynch.  Her complaint includes the following claims: "Count 1 – Retaliation – Title VII of the Civil Rights Act of 1964," "Count II – Title I of the Americans with Disabilities Act," and "Count III – Title I of the Americans with Disabilities Act (Pattern or Practice Claim)."  Plaintiff's Complaint notes that her employment with the University ended years ago and that, beginning in 2012, she began working for the Cleveland Clinic.  (Compl. at ¶¶ 20 & 42).  Plaintiff's Complaint seeks declaratory relief and monetary damages, including back and front pay, and pain and suffering.  (Compl. at 8-9).  Plaintiff's complaint broadly requests injunctive relief and also seeks "other appropriate relief."  (*Id*.).

The case was originally assigned to Judge Mark Goldsmith, who denied Plaintiff's motion seeking to proceed *in forma pauperis*.  Plaintiff later paid the required filing fee for this case.  This case was reassigned to this Court on August 29, 2017, as a companion case to Case Number 13-10469.

Plaintiff's Complaint in this third action includes allegations as to a prior action she filed

2

against the University in Washtenaw County Circuit Court and a prior federal case before this Court.  (*See, e.g.*, Compl. at ¶¶ 10 & 12).

For example, Plaintiff alleges that "Defendant bribed Mr. Wahl $4000 and gained his co-operation.  They teamed together and tried to force Ms. Gong to lie and promise that she would never report any scientific misconduct to any government agency.  Ms. Gong rejected their unlawful request, and insisted to have her cases trialed [sic] in the court with juries."  (*Id*. at 44).  Plaintiff further alleges:

> 46. On June 21, 2013, Mr. Wahl filed his withdraw motion to federal court. He told Ms. Gong he would not take her case to trail [sic] in the court because he had already promised defendant.
> 47. From June 26 to July 5, 2013, Ms. Gong was hospitalized because of much worsening depression.
> 48. On July 8, 2013, during the court time for his withdrawing motion, Mr. Wahl threatened to kick Ms. Gong's leg if she told the Judge anything differently than what he wanted her to say: He fooled her to sign an old draft of the settlement agreement.  Later, he entered this draft as "The Final."
> 49. On July 9, 2013, Ms. Gong received the new/final version of "the settlement agreement" which allowed her to have 14 days to consider if she wanted to accept or not.  Ms. Gong has never returned this formal settlement document back to Mr. Wahl or defendant: she has never accepted any settlement money from defendant.
> 50. After almost 4 months long trying, defendant realized that they would never receive any [signed] settlement from Ms. Gong; Ms. Gong would never agree to settle without having her employment reinstated.
> 51. On September 25, 2013, Defendant teamed with Dr. Wahl lied to Judge David Swartz at Washtenaw County Circuit Court and had Ms. Gong's whistleblower protection/civil right case reinstated and dismissed at the same time. The dismissal of the law suit was based on the "he said" "A full resolution / settlement has been reached at the federal court since July 8, 2013".

(*Id*. at ¶¶ 46-51).

Plaintiff's Complaint also includes allegations as to communications she had with representatives of the University, such as Donna Varner and Timothy Lynch, regarding those

3

prior cases.

B.     **Standard Of Decision**

Defendants' Motion to Dismiss indicates that it is brought under Fed. R. Civ. P. 12(b)(1) (lack of jurisdiction) and Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (*See* Defs.' Br. at 1 & 5).

A 12(b)(6) motion evaluates the sufficiency of the complaint. However, as explained in *Greenberg*, a court evaluating a 12(b)(6) motion may consider certain matters outside of the pleadings, without converting the motion into a summary judgment motion, in some circumstances:

> Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. *See* 11 james Wm. Moore et al., Moore's Federal Practice § 56.30[4] (3d ed.1998). This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim...." *Id.* In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment." *Id.; see, e.g., Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997) (considering pension plan documents that defendant attached to the motion to dismiss part of the pleadings because the documents were referred to in the complaint and were central to plaintiff's claim for benefits under the plan).

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

As a result, in deciding the pending Motion to Dismiss, this Court may consider public records from Plaintiff's two prior cases, and documents and emails referenced in Plaintiff's Complaint and central to her claims, such as the settlement agreement in Plaintiff's prior federal case, and emails with University officials.

4

**C.      Factual Background Concerning Plaintiff's Other Two Cases**

Before filing the instant case, Plaintiff filed two different actions against the University and some of its employees/officers.

First, in 2012, Plaintiff filed suit against the University and Martin G. Myers, Jr., M.D., Ph.D, in state court. That lawsuit was filed in Washtenaw County Circuit Court and was assigned to Judge David S. Swartz ("the Washtenaw County Case") Plaintiff was represented by attorney Gerald Wahl in the Washtenaw County Case.

On February 6, 2013, Plaintiff filed Case Number 13-10469, in federal court, through Mr. Wahl. Plaintiff named the University of Michigan and Martin Meyers as Defendants and Plaintiff asserted two counts: "Discrimination/Rehabilitation Act" (Count I); and "Retaliation/Rehabilitation Act" (Count II).

A stipulated order dismissing Defendant Myers from Case Number 13-10469 was issued on April 18, 2013. On June 20, 2013, Mr. Wahl filed a motion seeking to withdraw as counsel for Plaintiff in Case Number 13-10469.

The docket reflects that this Court held a motion hearing and status conference on July 8, 2013. On that date, an Order Dismissing Case with Prejudice was ultimately filed and it states: "The parties having placed a settlement of this action on the record on this date, IT IS ORDERED that this action is hereby DISMISSED WITH PREJUDICE and without costs or fees." (D.E. No. 14).

The transcript of the proceedings held on July 8, 2013 reflects the following. Plaintiff appeared at the hearing accompanied by a man named Douglas Smith, who is a physician. Wahl, Plaintiff's attorney, described Smith as "an advocate of sorts" for Plaintiff. (7/8/13 Hrg. Tr. at

3). When Wahl stated that he wished to withdraw from representing Plaintiff, Plaintiff responded that she was not understanding what he was saying, said she needed Smith's help (*Id*. at 4), and at one point appears to have asked for language translator. (*Id*. at 5). The Court went off the record after Plaintiff made statements indicating that she did not understand Wahl's motion to withdraw.

When the parties went back on the record later that same day, Wahl advised the Court that his Motion to Withdraw was now moot because the parties had reached a resolution of the case. (*Id*. at 8). Wahl stated that he "would like to put the resolution of – my client's assent to the terms on the record, without going through the terms. It's a five-page release document which she signed." (*Id.*). The Court then swore Plaintiff in and the following was placed on the record:

> MR. WAHL: I only have a few questions, Ms. Gong. You and I, along with Dr. Douglas Smith, have had a chance to – he has assisted you in understanding some of this legal process, correct?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you, Dr. Smith, and myself have had a chance to go over the full and final release of all claims?
> PLAINTIFF GONE: Yes.
> MR. WAHL: And you've signed it?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you understand its terms?
> PLAINTIFF GONG: Yeah.
> MR. WAHL: And you've agreed to those terms, in signing and initialing the various paragraphs in the release, is that right?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And this is something that you want to do, you haven't been coerced in some way that would suggest you're going to change your mind, based on your reading of the document?
> PLAINTIFF GONG: No.
> MR. WAHL: Is that correct?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you understand you're not going to sue U of M for the events up until this time –

PLAINTIFF GONG:  Yeah.
MR. WAHL:  – regarding your employment, is that correct?
PLAINTIFF GONG:  Yes.
MR. WAHL:  And just finally, you understood that you could have proceeded on with the litigation and gotten more money, gotten less money, got no money, or gotten the amount of money that you and the university have agreed to, is that correct?
PLAINTIFF GONG:  Say it again.
MR. WAHL:  Yeah.  You could have continued on with the litigation, and through the court process you could have obtained more money than you're getting, less money than you're getting, possibly no money, or the amount that you've agreed to in this release, correct?
PLAINTIFF GONG:  Yes.
MR. WAHL:  Okay.  I have no further questions
MR. TUKEL:  Just a couple.
Ms. Gong, nobody forced you to sign this agreement did they?
PLAINTIFF GONG:  No.
MR. TUKEL:  You did it because it was your decision that this was in your best interest to do, correct?
PLAINTIFF GONG:  Yeah.
MR. TUKEL:  And you understand that the settlement is not only this lawsuit, but also the lawsuit that's in state court in Ann Arbor, –
PLAINTIFF GONG:  yes.
MR. TUKEL:  – that will also be dismissed?
PLAINTIFF GONG:  Yes.
MR. TUKEL:  I have no other questions.
THE COURT:  All right.  And have you understood what went on here today, what the attorneys said to you, what I'm saying to you?
PLAINTIFF GONG:  Yes.
THE COURT:  Okay.  And, Dr. Smith, could you identify yourself for the record, please?
MR. SMITH:  Dr. Douglas Smith.
THE COURT:  And have you been in consultation with Ms. Gong and her attorney regarding this lawsuit?
MR. SMITH:  Yes.
THE COURT:  And the discussions that took place here this afternoon?
MR. SMITH:  Yes.
THE COURT:  And has she been able to understand in your mind what the attorneys have been saying to her and being able to communicate effectively with her attorney, Mr. Wahl, as well as Mr. Tukel?
MR. SMITH:  I believe so.

(Hrg. Tr. at 9-12). The Court suggested that the parties enter the signed agreement as an exhibit, but Defense Counsel did not want the exhibit submitted to the Court. (*Id*. at 12-13).

Defendants submitted, as Exhibit A to their motion, what they represent is the "Full and Final Release Of All Claims" that was signed by the parties on July 8, 2013. The document is five pages long. It provides that Wahl would receive $19,000.00, that Plaintiff would receive $41,000.00, and that the Sterling Law Firm and Plaintiff would each execute a W-9 form "as a pre-condition of payment." (*Id*. at 1).

The Release states that in consideration for the payment, Plaintiff "does hereby fully and forever release and discharge U of M and its agents, officers, Regents, employees and representatives, past, present and future . . . from any and all claims and causes of action of every kind, whether known or unknown . . . Such claims include, but are not limited to, any claim arising out of or in connection with Yusong Gong's employment with or termination of employment from any of the Released Parties; any claim for any type of employment discrimination or retaliation . . . " (*Id.* at 1-2). It states that the "parties understand that the only claim that Yusong Gong is not releasing is any potential workers disability compensation claim against the University." (*Id.* at 2).

The Release states that Plaintiff agrees not to be employed by the University, or to seek employment by the University in the future, and that Plaintiff "understands that her status with U of M will remain not eligible for rehire." (*Id.* at 3-4).

The Release states that "Yusong Gong understands that during the seven day period following her signature on this Release she may revoke this Release, provided that such revocation is in writing and delivered to the University of Michigan Officer of General Counsel

8

prior to the expiration of the seven day period, and this Release will not become effective or enforceable until the seven day revocation period has expired without her exercise of the right to revoke." (*Id*. at 4).

It is undisputed that Plaintiff never received the proceeds from the settlement that Wahl negotiated in her prior federal case.

Defendants attached an August 2, 2013 email from Defense Counsel to Wahl that noted that the University was prepared to tender settlement checks once certain conditions precedent were satisfied, such as Plaintiff filling out a W-9 and agreeing to dismiss the Washtenaw County case. (Defs.' Ex. C). That email to Wahl stated that Defense Counsel was "feeling some pressure to move forward, possibly with a Motion to Enforcement settlement agreement in federal court," but the docket reflects that no such motion was ever filed in the prior federal case before this Court.

Although the Court does not have a copy of the motion, it appears that Wahl filed a motion asking the judge in the Washtenaw County Case to reinstate that case for the purpose of dismissing the case. Defendants filed a response to that motion, asking the Court to reinstate the case for the sole purpose of entering an order of dismissal with prejudice. (Defs.' Ex. D). The motion noted that Plaintiff would not agree to a stipulated order to reinstate and dismiss the case and, therefore, sought an award of attorney fees for having to respond to the motion.

On September 25, 2013, the judge in the Washtenaw County Case issued an "Order of Reinstatement and Dismissal with Prejudice" "for the reasons stated" on the record on September 25, 2013, and ordered that case reinstated for the purpose of dismissing the case. (Defs.' Ex. E). Defendants were not awarded costs or attorney fees. This Court does not have a

9

transcript of the reasons stated on the record.

On November 26, 2013, Donica Varner from the University sent Plaintiff an email that stated:

> Your email to Dr. Simon was forwarded to me for response. Please recall that we asked you not to contact people at the University regarding your lawsuit. You are not eligible for re-hire at the University of Michigan.
>
> Per the settlement agreement that you signed, you are entitled to $41,000.00. I've attached the signed settlement agreement for your reference. We need for you to fill out the attached W-9 Form and return it to my attention. I will then ensure that your check is delivered to you.
>
> Thanks for your prompt attention to finalizing your settlement agreement.

(Defs.' Ex. F).

On January 15, 2016, Timothy Lynch, Vice President and General Counsel for the University, sent Plaintiff a letter stating:

> I appreciate the concerns you raised in our meeting yesterday regarding the termination of your employment at the University of Michigan. I have looked into these issues and see that (1) you signed a full and final release of all of your claims against the University and its employees; (2) the release has been approved by the court; and (3) your claims have been dismissed. In the release you agreed that you would not be reemployed by the University of Michigan.
> This release is a final and binding document, and it resolves all of your claims against the University and its employees. In addition, please be advised that although you have refused to accept the settlement payment the University is ready and willing to make the payment at your request.
> Under the circumstances, and having met with you in person, I will not continue to discuss these issues with you. Furthermore, please be advised that other University officials will not meet or otherwise communicate with you about these matters any further.

(Pl.'s Ex. 6).

On June 9, 2016, Donica Varner from the University sent an email, that was a continuation of her November 26, 2013 email thread to Plaintiff, stating:

> I'm writing to provide a gentle reminder that you are entitled to $41,000.00 from the University of Michigan. Completing the form W-9 and returning it to me will not change the outcome of the employment lawsuit or the workers' compensation proceeding. The payment, however, if likely to positively improve your current situation.
>
> Based on your recent email to Ms. Rychlinski and Ms. Winarski, I'm hopeful that your are [sic] ready to accept this resolution.

(*Id*.). On June 22, 2016, Plaintiff responded that "If the U is willing to provide me a health insurance, I may consider your offer to end this battle." (*Id*.).

On July 18, 2016, Plaintiff filed a Charge of Discrimination against the University with the EEOC, asserting that the University, claiming that the University wrongfully failed to consider her for employment. (Defs.' Ex. G).

## ANALYSIS

Plaintiff's Complaint in this action includes a Title VII retaliation claim (Count I) and two counts asserted under the ADA (Counts II & III). Defendants' Motion to Dismiss asserts that all three of those claims should be dismissed on several grounds.

In response to Defendants' motion, Plaintiff filed a "Motion to Strike Defendants' Motion to Dismiss Plaintiff's Complaint," that is actually a response brief in opposition to Defendants' Motion to Dismiss. That is, it asserts no permissible basis for "striking" Defendants' properly-filed motion, but rather, contains arguments as to why Plaintiff believes the motion should be denied.[1]

**I.** **Are Plaintiff's Claims Barred By The Settlement In Plaintiff's Prior Federal Case?**

Defendants' first argument is that Plaintiff's claims in this action are barred by the

---

[1]As such, this "motion" shall be terminated on the Court's docket.

written settlement that Plaintiff signed in connection with her prior federal case. Defendants argue that the Release that Plaintiff acknowledges that she signed on July 8, 2013, "should be enforced to bar Plaintiff's claims of discrimination and retaliation" asserted in this case. (Defs.' Br. at 8).

Defendants assert that settlement agreements are contracts, which are governed by state law. They note that under Michigan law, a settlement agreement is a final agreement and generally cannot be modified except for specified reasons, such as fraud, mutual mistake, or fraud.

Often times, such arguments are raised in connection with a motion to enforce a settlement agreement (*see, e.g., Neely v. Good Samaritan Hosp.*, 345 F. App'x 39 (6th Cir. 2009). But here, the University never filed such a motion in connection with Plaintiff's prior federal case. And this argument is raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6) – not a motion for summary judgment under Fed. R. Civ. P. 56.

Broadly construing Plaintiff's *pro se* Complaint and her response brief, she asserts that the Release is not enforceable under Michigan law because: 1) she exercised her right to revoke it; and 2) she was under duress and/or lacked mental capacity to contract at the time she signed it.

    **A.**    **Not Enforceable Because Of Revocation**

In response to Defendants' Motion to Dismiss, Plaintiff notes that "the document which Ms. Gong signed on July 8, 2013 includes the right to revoke within 7 days after signing." (Pl.'s Br. at 14). Plaintiff asserts that she "exercised her right to revoke on July 9, 2013 and later." (*Id.*). Plaintiff further asserts that she "ordered her attorney to revoke her July 8, 2013 signing

within the seven days revocation period" and that "Mr. Wahl should have informed the defendant within 7 days." (*Id*. at 13 & 14).

Although this is a motion to dismiss, Defendants' Reply Brief asserts that while Plaintiff claims to have revoked consent, "she fails to *present any evidence* that she revoked the agreement as provided for in the settlement." (Defs.' Reply Br. at 2) (emphasis added). Defendants then submit two exhibits to their Reply Brief, which are affidavits from Mr. Tukel and another agent of the University. But this is a motion to dismiss, not a motion for summary judgment, and those affidavits were not referenced in the complaint. The Court cannot consider those affidavits without converting the pending Motion to Dismiss into a motion for summary judgment.

        B.        **Not Enforceable Because Of Duress Or Incapacity**

Broadly construing Plaintiff's *pro se* Complaint and her response brief, she also asserts that the Release is not enforceable under Michigan law because she was under duress and/or lacked mental capacity at the time she signed it.

Defendants' Reply Brief raises issues relating to that response,[2] but they are not issues that can be resolved on motion to dismiss and they were raised for the first time in a reply brief, and therefore Plaintiff had no opportunity to respond to those issues.

While Defendants may well prevail on this challenge at the summary judgment stage, the Court does not believe Defendants have established that Plaintiff's claims should be dismissed

---

[2]In Defendants' Reply Brief, they also improperly raise additional arguments for the first time. (*See* Reply Brief at 3, making an estoppel argument and res judicata argument for the first time).

13

based on the Release in connection with this motion dismiss brought under Fed. R. Civ. P. 12(b)(6).

**II.     Is The University Immune From Plaintiff's ADA Counts Under The Doctrine Of Sovereign Immunity?**

In their motion, Defendants assert that the University[3] is immune from Plaintiff's ADA claims under the doctrine of sovereign immunity.

In response to Defendants' motion, Plaintiff asserts that because the University accepted federal funds, that is a waiver of sovereign immunity. (Pl.'s Br. at 10). In support of that argument, Plaintiff directs the Court to "Doe v. Nebraska in the 8th Circuit and Thomas v. University of Houston in the 5th Circuit." (*Id.*).

As Defendants' correctly note in their Reply Brief, those cases dealt with the Rehabilitation Act, not the ADA. *See Nihiser v. Ohio E.P.A.* 269 F.3d 626 (6th Cir. 2001) (noting that while the plaintiff's ADA claims were barred by Eleventh Amendment immunity, his claims under the Rehabilitation Act were not because the State waived their Eleventh Amendment immunity "with regard to Rehabilitation Act claims when they accept federal funds."). Plaintiff has not asserted any Rehabilitation Act claims in this action. The Court will therefore consider this challenge to Plaintiff's ADA claims.

The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

---

[3]Plaintiff's complaint does not assert any official capacity claims against the individual Defendants but, even if Plaintiff had asserted official capacity claims against them for money damages, they would be barred by the Eleventh Amendment. *McCormick*, 693 F.3d at 662.

14

the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." U.S. Const. amend. XI.

As explained in *McCormick v. Miami University*, 693 F.3d 654, 661 (6th Cir. 2012), "Eleventh Amendment immunity 'bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens.'" *Id*. (quoting *Thiokol Corp. v. Dep't of Treasury,* 987 F.2d 376, 381 (6th Cir. 1993)).

In *McCormick,* the Sixth Circuit held that Eleventh Amendment immunity applied to Miami University, because it is a public university in the state of Ohio. *Id*. The University of Michigan, a state agency, and its Board of Regents, likewise have Eleventh Amendment immunity unless it has been waived. *Ewing v. Board of Regents of the University of Michigan*, 552 F. Supp. 881 (E.D. Mich. 1982); *Estate of Ritter v. University of Michigan*, 851 F.2d 846 (6th Cir. 1988).

It is well-established that Eleventh Amendment immunity applies to ADA claims for monetary damages. *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001); *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011) ("Because Title I [of the ADA] did not abrogate the states' Eleventh Amendment immunity, individuals may not sue states for money damages under Title I.")

There is a limited exception to sovereign immunity, however, if the complaint constitutes an *Ex parte Young* action for prospective injunctive relief. *Whitfield*, 639 F.3d at 257. A request for reinstatement to employment is such an excepted claim. *Id*. To determine if there is such an excepted claim in this action, the Court is to look to the plaintiff's complaint. *Whitfield,* 639 F.3d at 257.

Here, Plaintiff's *pro se* complaint does not include an express request for reinstatement but it does include a broad request for injunctive relief. Moreover, her response brief indicates "Ms. Gong wants her employment reinstated with the defendant" (Pl.'s Br. at 6).

In light of the requests for relief in her *pro se* complaint, and the express reference to reinstatement in her response brief, the Court rules that any ADA's claims for monetary damages in this action are barred by Eleventh Amendment immunity, but that to the extent Plaintiff's complaint seeks reinstatement under the ADA, that *limited claim* is not barred by Eleventh Amendment immunity.

### III. Should Plaintiff's ADA And Title VII Claims Against The Individual Defendants Be Dismissed?

In their motion, Defendant contends that Plaintiff's ADA and Title VII claims against the individual Defendants must be dismissed because: 1) as individual employees of the University, they can not be held personally liable under either Title VII or the ADA; and 2) even if they could, Plaintiff failed to exhaust administrative remedies as to her claims against them because she never filed an EEOC charge against them. The Court need not go beyond the first issue.

Plaintiff's complaint alleges that she was previously employed by the University. She does not allege that she was ever employed by the three individual Defendants she names in the action, Simon, Henderson, and Lynch. Rather, she alleges that those individual Defendants were employees of the University that she interacted with at various times. She alleges that Simon was a member of the faculty (Compl. ¶ 25), that Henderson worked in Human Resources (Compl. at ¶ 73), and that Lynch is the University's Vice President of General Counsel. (Compl. at 56).

In *Wathen v. General Electric Company*, 115 F.3d 100 (6th Cir. 1997), the Sixth Circuit

held that an individual employee/supervisor, who does not otherwise qualify as an "employer" under the statute, may not be personally liable under Title VII. The same is true of the ADA. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999); *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007) ("We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities.")

As such, Plaintiff's Title VII and ADA claims against Simon, Henderson, and Lynch, shall be dismissed with prejudice.

### CONCLUSION & ORDER

For the reasons set forth below, the Court **ORDERS** that Defendants' Motion to Dismiss is **GRANTED** to the extent that the Court:

1) **RULES** that any ADA claims for monetary damages in this action are barred by Eleventh Amendment immunity, but that to the extent Plaintiff's complaint seeks reinstatement under the ADA, that limited claim is not barred by Eleventh Amendment immunity; and

2) **DISMISSES WITH PREJUDICE** Plaintiff's claims against the three individual Defendants (Simon, Henderson, and Lynch).

The motion is **DENIED WITHOUT PREJUDICE** in all other respects.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: February 13, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 13, 2018, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager Generalist