UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Yusong Gong,

      Plaintiff,

v.                                                              Case No. 16-14516

The University of Michigan,                    Sean F. Cox
                                                                United States District Court Judge

      Defendant.
_____/

**OPINION & ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This *pro se* action, filed by Plaintiff Yusong Gong ("Gong") against the University of

Michigan ("the University"), has been before the Court several times. It is presently before the

Court on a Motion for Summary Judgment, brought by the University after the close of

discovery. The motion has been briefed by the parties and the Court held a hearing on December

13, 2018. For the reasons set forth below, the Court shall GRANT the University's motion and

shall DISMISS THIS ACTION WITH PREJUDICE.

**BACKGROUND**

On December 28, 2016, Gong filed this action against Defendant the University of

Michigan and three of its employees, Richard Simon, Michelle Henderson, and Timothy Lynch.

Gong's original complaint included the following claims: "Count 1 – Retaliation – Title VII of

the Civil Rights Act of 1964," "Count II – Title I of the Americans with Disabilities Act," and

"Count III – Title I of the Americans with Disabilities Act (Pattern or Practice Claim)."

In an Opinion & Order issued on February 13, 2018, this Court granted in part and denied

in part a Motion to Dismiss filed by Defendants. (ECF No. 41). This Court granted the motion to the extent that it: 1) ruled any ADA claims for monetary damages in this action are barred by Eleventh Amendment immunity; 2) dismissed with prejudice Gong's claims against Simon, Henderson, and Lynch because an individual employee/supervisor, who does not otherwise qualify as an "employer" under the statute, may not be personally liable under Title VII or the ADA. The Court denied "without prejudice Defendants' challenge based on the Release in a prior federal case filed by [Gong] because, while Defendants may prevail on that challenge in the context of a motion for summary judgment, they have not established that they can prevail on that challenge in connection with a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6)." (*Id*. at 1).

The University's Affirmative Defenses include that Gong claims are barred by the settlement agreement executed by the parties and placed on the record in Case No. 13-10469 on July 8, 2013, that her claims are barred by sovereign immunity, that her claims are barred by her failure to exhaust administrative remedies, and her claimed are barred by the applicable statutes of limitations. (ECF No. 42).

On March 15, 2018, the Court issued the Scheduling Order in this matter that provides that discovery is to be completed by July 20, 2018, and motions shall be filed by August 20, 2018.

Gong filed motions seeking leave to file amended complaints, which were denied by the Court for multiple reasons.

At this juncture, the only remaining Defendant in this action is the University and the

only claims[1] against it are: 1) an ADA claim, but only to the extent that Gong seeks reinstatement of her employment at the University; and 2) a retaliation claim under Title VII.

As best as the Court can determine from Gong's *pro se* complaint, her ADA claim asserts that Gong suffers from depression, anxiety, carpal tunnel syndrome, and other physical ailments. (Compl. at 18-19, & 69). Gong alleges that she began working for the University in 2001 and that the University terminated her employment in April of 2012. (*Id*. at ¶ 15). Gong alleges that while she was employed by the University, the University violated the ADA by denying her requests for accommodations and her requests to be transferred in to a different job position. (*Id.* at 71-79). Gong also appears to claim that the University discriminated against her based on her disabilities when it did not re-hire her in January of 2016. (*See* Def.'s Ex. S). Again, Gong's ADA claim against the University only remains as to Gong's request to be reinstated to her job at the University.

As to Gong's Title VII retaliation claim, Gong asserts that the University terminated her in 2012, and took actions prior to her termination, in violation for Gong having complained to the University's Office of Institutional Equity about gender and nationality discrimination in 2008. (*See, e.g.*, Compl. at ¶¶ 9, 63). Gong also appears to allege that the University retaliated against her for prior protected activity by not re-hiring her in 2016 after she was terminated. (Compl. at 14; Def.'s Ex. S).

Following the close of discovery, the University filed a Motion for Summary Judgment, seeking summary judgment in its favor as to both claims.

---

[1]To the extent that Gong intended to assert any state-law claims in her complaint, this Court declines to exercise supplemental jurisdiction over such claims.

Gong requested, and was granted, an extension of time for responding to the University's Motion for Summary Judgment. (ECF Nos. 76 & 78). Gong ultimately filed a response brief (ECF No. 80) and attached the following 10 exhibits to it: 1) documents from Gong's 2012 State case, marked as "Exhibit 21" (*Id.* at Page ID 1110; 2) an email from Mr. Wahl, marked as "Exhibit 24" (*Id.* at Page ID 1114); 3) a transcript from a hearing in the State case, marked as "Exhibit 26" (*Id.* at Page ID 1116); 4) an email to the University, marked as "Exhibit 34" (*Id.* at Page ID 1119); 5) a portion of a hearing transcript from the prior Federal Action, marked as "Exhibit 35" (*Id.* at Page ID 1121); 6) an email to Gong from Douglas Smith, marked as "Exhibit 36" (*Id.* at Page ID 1124); 7) an email from Gong, marked as "Exhibit 37" (*Id.* at Page ID 1126); 8) a 2016 EEOC intake form, marked as "Exhibit 38" (*Id.* at Page ID 1128); 9) an email from the University, marked as "Exhibit 39" (*Id.* at Page ID 1135); and 10) a note by Gong's psychiatrist, marked as "Exhibit 40" (*Id.* at Page ID 1137). No other exhibits were filed by Gong in response to the University's motion.

Gong was previously employed by the University as a Research Lab Specialist. It appears that Gong was hired in 2001. (Def.'s Ex. A; Pl.'s Compl. at 15). Gong was discharged from the University, in April of 2012, for disruptive behavior. (Def.'s Ex. A).

There is no evidence before this Court that Gong filed an EEOC charge within 300 days after her 2012 termination, claiming that she was discriminated or retaliated against in violation of the ADA or Title VII. Gong's Complaint does not allege that she filed such a charge, and in response to the University's properly-supported summary judgment motion Gong has not

provided such a charge as an exhibit.  Neither has the University.[2]

On July 13, 2012, Gong filed a *pro se* lawsuit in Washtenaw County Circuit Court against the University and one of its employees, Martin Myers.  In that action, Gong alleged claims of national origin discrimination and retaliation under Michigan's Elliott Larsen Civil Rights Act, and retaliation under Michigan's Whistleblower Protection Act.  The Court will refer to this as the "State Case."  The State Case did not include any claims under the federal ADA or Title VII.  Attorney Gerald Wahl later entered the State Case on behalf of Gong.

On February 6, 2013, acting through counsel, Gerald Wahl, Gong filed another lawsuit against the University and Myers.  That Case, Case No. 13-10469, was filed in federal court and was assigned to this Court.  In that action, Gong alleged she was discharged and retaliated against in violation of the federal Rehabilitation Act.  (Def.'s Ex. C, Case No. 13-10469 at ECF No. 1). This case did not include any claims under the ADA or Title VII.  The Court will refer to this case as Gong's First Federal Action.  A stipulated order dismissing Defendant Myers was issued on April 18, 2013.  On June 20, 2013, Mr. Wahl filed a motion to withdraw as counsel for Gong in the First Federal Action.

On June 28, 2013, after Gong's State Case was dismissed for lack of progress, her attorney Mr. Wahl filed a Motion for Reinstatement of the State Case.  (Def.'s Ex. D).  In that motion, Gong's attorney advised the state court that "from October until current time, the parties were, through counsel, engaged in extensive settlement discussions of this matter and a federal case between the same parties."  (*Id*. at 2).  The motion asked the Court to reinstate the State

---

[2]At the hearing, Counsel for the University advised the Court that the University has no such EEOC charge.

Case.

On July 8, 2013, this Court held a motion hearing and status conference in the First

Federal Case. Gong personally appeared, along with a friend of hers, Douglas Smith, who is a

physician.

During the course of proceedings that day, Wahl advised the Court that his Motion to

Withdraw was now moot because the parties had reached a resolution of the case. (*Id*. at 8).

Wahl stated that he "would like to put the resolution of – my client's assent to the terms on the

record, without going through the terms. It's a five-page release document which she signed."

(*Id*.). The Court then swore Gong in and the following was placed on the record:

> MR. WAHL: I only have a few questions, Ms. Gong. You and I, along with Dr.
> Douglas Smith, have had a chance to – he has assisted you in
> understanding some of this legal process, correct?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you, Dr. Smith, and myself have had a chance to go over the
> full and final release of all claims?
> PLAINTIFF GONE: Yes.
> MR. WAHL: And you've signed it?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you understand its terms?
> PLAINTIFF GONG: Yeah.
> MR. WAHL: And you've agreed to those terms, in signing and initialing the
> various paragraphs in the release, is that right?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And this is something that you want to do, you haven't been
> coerced in some way that would suggest you're going to change
> your mind, based on your reading of the document?
> PLAINTIFF GONG: No.
> MR. WAHL: Is that correct?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you understand you're not going to sue U of M for the events
> up until this time –
> PLAINTIFF GONG: Yeah.
> MR. WAHL: – regarding your employment, is that correct?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And just finally, you understood that you could have proceeded on

with the litigation and gotten more money, gotten less money, got no money, or gotten the amount of money that you and the university have agreed to, is that correct?

PLAINTIFF GONG:  Say it again.

MR. WAHL:  Yeah.  You could have continued on with the litigation, and through the court process you could have obtained more money than you're getting, less money than you're getting, possibly no money, or the amount that you've agreed to in this release, correct?

PLAINTIFF GONG:  Yes.

MR. WAHL:  Okay.  I have no further questions

MR. TUKEL:  Just a couple.

Ms. Gong, nobody forced you to sign this agreement did they?

PLAINTIFF GONG:  No.

MR. TUKEL:  You did it because it was your decision that this was in your best interest to do, correct?

PLAINTIFF GONG:  Yeah.

MR. TUKEL:  And you understand that the settlement is not only this lawsuit, but also the lawsuit that's in state court in Ann Arbor, –

PLAINTIFF GONG:  yes.

MR. TUKEL:  – that will also be dismissed?

PLAINTIFF GONG:  Yes.

MR. TUKEL:  I have no other questions.

THE COURT:  All right.  And have you understood what went on here today, what the attorneys said to you, what I'm saying to you?

PLAINTIFF GONG:  Yes.

THE COURT:  Okay.  And, Dr. Smith, could you identify yourself for the record, please?

MR. SMITH:  Dr. Douglas Smith.

THE COURT:  And have you been in consultation with Ms. Gong and her attorney regarding this lawsuit?

MR. SMITH:  Yes.

THE COURT:  And the discussions that took place here this afternoon?

MR. SMITH:  Yes.

THE COURT:  And has she been able to understand in your mind what the attorneys have been saying to her and being able to communicate effectively with her attorney, Mr. Wahl, as well as Mr. Tukel?

MR. SMITH:  I believe so.

(Hrg. Tr. at 9-12).

A copy of the "Full and Final Release of All Claims" that the parties signed on July 8,

2013, is attached to the University's Motion as Exhibit E ("the Release"). The Release is five pages long. It provides that Wahl would receive $19,000.00, that Gong would receive $41,000.00, and that the Sterling Law Firm and Gong would each execute a W-9 form "as a pre-condition of payment." (*Id*. at 1).

The Release states that in consideration for the payment, Gong "does hereby fully and forever release and discharge U of M and its agents, officers, Regents, employees and representatives, past, present and future . . . from any and all claims and causes of action of every kind, whether known or unknown . . . Such claims include, but are not limited to, any claim arising out of or in connection with Yusong Gong's employment with or termination of employment from any of the Released Parties; any claim for any type of employment discrimination or retaliation . . . " (*Id.* at 1-2). It states that the "parties understand that the only claim that Yusong Gong is not releasing is any potential workers disability compensation claim against the University." (*Id.* at 2).

The Release states that Gong agrees not to be employed by the University, or to seek employment by the University in the future, and that Gong "understands that her status with U of M will remain not eligible for rehire." (*Id.* at 3-4).

The Release includes the following provision regarding Gong's right to revoke the Release:

> Yusong Gong acknowledges that she has been advised to consult with an attorney and has consulted with an attorney prior to executing this Release. Yusong Gong represents and acknowledges that before signing this Release she read the same, consisting of five pages, that she fully understands its terms, content and effect, and that she has relied fully and completely on her own judgment and on the advice of her attorney in executing this Release. Yusong Gong further acknowledges that she was given a period of twenty-one (21) days within which to consider this Release before signing it. *Yusong Gong understands that during*

*the seven day period following her signature on this Release she may revoke this Release, provided that such revocation is in writing and delivered to the University of Michigan Officer of General Counsel prior to the expiration of the seven day period*, and this Release will not become effective or enforceable until the seven day revocation period has expired without her exercise of the right to revoke.

(*Id*. at 4) (emphasis added).

Later that day, July 8, 2013, an order dismissing the First Federal Action with prejudice was issued and it states: "The parties having placed a settlement of this action on the record on this date, IT IS ORDERED that this action is hereby DISMISSED WITH PREJUDICE and without costs or fees." (ECF No. 14 in Case No. 13-10469).

Neither Gong nor her Counsel submitted a written notice to the Office of the General Counsel revoking the Release within the seven-day period following July 8, 2013. (*See* Affidavits of Daniel B. Tukel and Jennifer Traver, Def.'s Exs. I & J).

Gong did not return an executed W-9, despite the University's reminders and requests that she do so. (Def.'s Ex. L). Rather, Gong attempted to renegotiate a settlement with the University. (*See* Def.'s Ex. Q).

On September 3, 2013, the University filed a brief in response to Gong's motion seeking to reinstate the State Case. (Def.'s Ex. M). In that motion, the University argued that the Release entered before this Court in the Prior Federal Action on July 8, 2013 was a valid and binding settlement and required dismissal of the State Case with prejudice. The University asserted that the State Case should only be reinstated so that a dismissal with prejudice could be entered based on the Release.

The trial judge in the State Case heard oral argument on the motion on September 25, 2013. (Def.'s Ex. O.). Gong was still represented by counsel at that hearing. During the

hearing, counsel for the University continued to argue that there was a valid settlement between the parties reached in the Prior Federal Action and, therefore, the State Case should be reinstated and then dismissed with prejudice. Counsel for Gong did not dispute the validity of the Release during the hearing. Gong attempted to speak at the end of the hearing but was not permitted to do so, as she was represented by counsel. After the hearing, the judge reinstated the State Case and then dismissed it with prejudice, as requested by the University. (Def.'s Ex. P).

On July 18, 2016, Gong filed an EEOC charge against the University. (Def.'s Ex. S). In it, Gong claimed that the University discriminated against her on the basis of her disabilities, and retaliated against her for having filed a prior EEOC charge and lawsuits against the University, when the University did not rehire her when she applied for employment in January of 2016. (*Id*.). Gong received a Right-To-Sue Letter from the EEOC relating to that charge on October 6, 2016. (Def.'s Ex. T).

Gong filed this third action against the University on December 28, 2016. It was originally assigned to another judge but was reassigned to this Court on August 29, 2017, as a companion case to Gong's First Federal Action.

## ANALYSIS

In its Motion for Summary Judgment, the University asserts that it is entitled to summary judgment in its favor as to all remaining claims. It asserts that: 1) any claims related to Gong's 2012 termination (or events prior to it) are barred due to failure to exhaust administrative remedies and related statute of limitations; 2) that Gong is collaterally estopped from challenging the settlement agreement, by virtue of the order in the State case dismissing it with prejudice based on the Release; 3) and Gong's claims are barred by the final judgment and Release in the

First Federal Action.

**I.      Are Any Title VII Or ADA Claims Based Upon Gong's April 2012 Termination (Or Events That Occurred Prior To That) Barred Due To Failure To Exhaust Administrative Remedies?**

Based on what has been submitted by the parties, the Court concludes that any Title VII or ADA claims based upon Gong's April 2012 termination, or events that occurred prior to that time, are barred due to Gong's failure to exhaust administrative remedies and/or failure to file suit within the related limitations periods.

"In Title VII, Congress set up an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims" of discrimination and retaliation in the workplace "and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1981). "It is well settled that a plaintiff must satisfy two prerequisites before filing a Title VII action in federal court: (1) timely file a charge of employment discrimination [or retaliation] with the EEOC; and (2) receive and act upon the EEOC's statutory notice of the right to sue ('right-to-sue letter')" *Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006); *see also Peeples v. City of Detroit*, 891 F.3d 622, 630 (6th Cir. 2018).

The same is true as to ADA claims. *See, e.g., Bullington v. Bedford Cnty,* 905 F.3d 467, 469 (6th Cir. 2018) ("For an ADA claim, a plaintiff needs to exhaust administrative remedies."); *Williams v. Northwest Airlines, Inc*., 53 F. App'x 350, 351 (6th Cir. 2002) ("Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII or ADA action" because "exhaustion of administrative remedies is a condition precedent to a Title VII or ADA action."); *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000)

("Under the ADA, a claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination with the EEOC within 300 days of the alleged discrimination" and "may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC").

Here, the record before the Court does not include a copy of any EEOC charge that Gong filed within 300 days of the date of her termination from the University. The record does reflect that Gong filed an EEOC charge in 2016, but that charge does not allow Gong to assert claims based upon her 2012 termination or events that occurred prior to her termination. Gong's brief references having filed an EEOC intake questionnaire on January 22, 2013, and directs the Court to her "Exhibit 27." (Pl.'s Br. at 13). But Gong did not file an Exhibit numbered 27, and none of the exhibits she did file include any EEOC charge filed prior to 2016, or any right-to-sue letters from the EEOC issued after such a charge. The EEOC charge that the University filed as its Exhibit S is the EEOC charge that Gong filed in 2016, alleging that the University violated the ADA by not hiring her in 2016. Thus, the record before this Court contains no 2013 EEOC charge by Gong. As such, even if she filed such a charge with the EEOC, the Court would have no way of knowing if the charge included claims under the ADA or Title VII.

Moreover, assuming *arguendo* that Gong filed a timely EEOC charge after her April 2012 termination, and that it included both ADA and Title III claims, Gong would also have had to file suit within 90 days of having received the "right-to-sue" letter from the EEOC as to that charge. There is no such letter in the evidence before the Court. And given that Gong did not file this case until 2016, it is highly unlikely it would have been timely filed, even if Gong had filed an EEOC charge in 2013.

Gong's brief appears to assert that her claims in this action are somehow timely because of the State case she filed in 2012, or because of her First Federal Action back in 2013. Neither of those cases included either Title VII or ADA claims, however, and this Court fails to see how the filing of either of those actions would make Gong's complaint in this 2016 case timely.

Based on the evidence submitted in connection with the pending motion, to the extent that Gong is attempting to raise Title VII or ADA claims based upon her termination, or events that occurred prior to that time, those claims shall be dismissed because of Gong's failure to exhaust administrative remedies. *Lopez-Flores v. General Motors Corp.*, 1992 WL 146651 (6th Cir. 1992).[3]

## II. Does The State-Court's Decision Enforcing The Settlement Agreement Collaterally Estop Gong From Challenging The Settlement Agreement In This Case?

Next, the University argues that Gong is collaterally estopped from challenging the settlement agreement, by virtue of the order in the State case dismissing it with prejudice based on the Release. It directs the Court to *Polk v. Yellow Freight Sys., Inc.*, 801 F.2d 190 (6th Cir. 1986), which stated:

> The Michigan Supreme Court has adopted the test set forth in section 68 of the Restatement of the Law of Judgments as the applicable standard for collateral estoppel in Michigan: 'Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between parties in a subsequent action on a different cause of action . . .' *Senior Accountants*, 399 Mich. at 458, 249 N.W.2d 121 (footnote omitted).

*Id*. at 194. The University notes that, in the State Case, the University responded to Gong's

---

[3]In opposing the University's Motion, Gong does not argue that equitable tolling applies and the Court sees no basis for it.

motion seeking to reinstate the case by arguing that the case should only be reinstated so that it could be dismissed without prejudice, as the parties had entered into a valid and binding Release that settled Gong's claims. The University argues that Gong could have disputed the validity of the Release in that action, but failed to do so, and therefore she is collaterally estopped from doing so now.

Gong's brief does not make any legal arguments relating to collateral estoppel. Rather, she makes limited factual *assertions* that relate to this issue, such as arguing that she fired Mr. Wahl before the hearing. (*See* Pl.'s Br. at 22). But Gong has not offered any *evidence* to establish that she fired Mr. Wahl prior to the State Court's hearing or order. And the transcript of the hearing shows that Gong did not argue before the State Court that she had fired Mr. Wahl. Rather, she wanted to argue after Mr. Wahl had concluded his presentation and the judge did not allow Gong to speak because she was represented by counsel.

Accordingly, the University's collateral estoppel argument appears to have merit and provides an additional reason why Gong's claims in this action must be dismissed with prejudice.

## III. Even Without That State-Court Order, Are Gong's Claims Barred By The Final Judgment And Settlement Release In Gong's First Federal Action?

Finally, the University's summary judgment motion asserts that Gong's claims in this action are barred the Release that Gong agreed to in the First Federal Action.

The University asserts, and Gong's response brief does not dispute,[4] that the issue of the validity of the Release at issue in this case is governed by federal law. (*See* Def.'s Br. at 8).

_____

[4]Gong's brief does not direct the Court to any Michigan law or argue that Michigan law governs this issue. (Pl.'s Br. at 2).

That appears true, as the release at issue here released Gong's federal Rehabilitation Act claims that were raised in Gong's First Federal Action and the Sixth Circuit has held that "[f]ederal law governs the validity of a release of a federal cause of action." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1481 (6th Cir. 1989).[5]

"[O]rdinary contract principles" apply in determining the validity of such a release. *Adams v. Phillip Morris, Inc.*, 67 F.3d 580, 583 (6th Cir. 1995); *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 632 (6th Cir. 2006) (same under Michigan law).

In evaluating whether a release has been knowingly and voluntarily executed, the Court looks to: 1) the plaintiff's experience, background, and education; 2) the amount of time plaintiff has to consider whether to sign the waiver, including whether the employee had an opportunity to consult with a lawyer; 3) the clarity of the waiver; 4) consideration for the waiver; and 5) the totality of the circumstances. *Adams*, 471 F.3d at 583.

Here, the undisputed evidence before the Court reflects that Gong is a college-educated medical researcher, who has been employed by two preeminent healthcare facilities, the University and the Cleveland Clinic. At the time she signed the Release, Gong was forty-nine years old. Gong had retained experienced legal counsel, who represented her in both the State Case and the First Federal Action. Prior to appearing in Court on July 8, 2013, Counsel for Gong and the University had been involved in settlement negotiations for several months. The parties continued negotiating the settlement during the July 8, 2013 conference, during which

---

[5]Moreover, the outcome of this motion would be the same even if Michigan law governed the issue of the validity of the release. As such, the Court includes some citations to Michigan law as well.

Gong was represented by her counsel and accompanied by a highly-educated friend. The Release that was ultimately agreed to on July 8th reflects that the parties negotiated changes to the release during that conference, including changes requested by Gong. The terms of the Release are clear and unambiguous, and Gong was given valuable consideration for the waiver. Moreover, because the parties' placed the settlement on the record before the undersigned, this Court had the opportunity to personally observe and question Gong at the time of the settlement agreement, to ensure to this Court's satisfaction that Gong understood the terms of the agreement and was knowingly and voluntarily agreeing to the release.

Broadly construing her *pro se* response brief, Gong seeks to challenge the validity of the Release by claiming that: 1) she was under duress from her attorney at the time she agreed to the Release on July 8, 2013; 2) she lacked the mental capacity to enter into the Release because she suffers from stress and depression; 3) the University "has never paid her a penny." (*Id.* at 32); and 4) she revoked the Release or wanted her counsel to revoke it.

As explained below, all of those challenges fail.

## A. Duress

First, Gong suggests that she signed the July 8th release because she was under duress from her own attorney, Mr. Wahl. (*See* Pl.'s Br. at 7, stating that "Gong was shouted and threatened by Mr. Wahl, she gave up and signed a settlement agreement but did not expect that it would be submitted to the court.").

"[P]hysical and verbal threats during the bargaining process may rise to the level of coercion when they are 'improper' and when the threat 'leaves the victim no reasonable alternative.'" *Gashco v. Scheurer Hosp*., 400 F. App'x 978, 983 (6th Cir. 2010) (citations

omitted).

Notably, however, in response to the University's properly-supported summary judgment motion, Gong has not offered *any evidence* to support her assertions relating to duress, such as an affidavit or deposition testimony.

Moreover, this Court was present for the July 8th status conference and observed no such conduct. In addition, Gong confirmed on the record, and under oath, that she was signing the release voluntarily and without coercion:

> MR. WAHL: And you've signed it?
> PLAINTIFF GONG: Yes.
> MR. WAHL: And you understand its terms?
> PLAINTIFF GONG: Yeah.
> MR. WAHL: And you've agreed to those terms, in signing and initialing the various paragraphs in the release, is that right?
> PLAINTIFF GONG: Yes.
> . . . .
>
> MR. WAHL: Okay. I have no further questions
> MR. TUKEL: Just a couple.
> Ms. Gong, nobody forced you to sign this agreement did they?
> PLAINTIFF GONG: No.
> MR. TUKEL: You did it because it was your decision that this was in your best interest to do, correct?
> PLAINTIFF GONG: Yeah.
> MR. TUKEL: And you understand that the settlement is not only this lawsuit, but also the lawsuit that's in state court in Ann Arbor, –
> PLAINTIFF GONG: yes.
> MR. TUKEL: – that will also be dismissed?
> PLAINTIFF GONG: Yes.
> MR. TUKEL: I have no other questions.
> THE COURT: All right. And have you understood what went on here today, what the attorneys said to you, what I'm saying to you?
> PLAINTIFF GONG: Yes.

(7/8/13 Hrg. Tr.).

### B. Mental Capacity

Gong also asserts that she lacked the mental capacity to enter into the settlement because she suffers from depression and stress.

Both federal and Michigan case law reflects that a plaintiff's conclusory allegations regarding lack of mental capacity, without more, are insufficient to invalidate a settlement agreement. *See, eg., Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 12-13 (1st Cir. 1997) (rejecting challenge to validity of release based on alleged lack of mental capacity, due to post-traumatic stress disorder and anxiety disorder, where the plaintiff failed to submit an affidavit from his treating psychiatrist or from any other medical expert.); *Morais v. Central Beverage Corp. Union Employees' Suppl. Retire. Plan*, 167 F.3d 709 (1st Cir. 1999) (affirming summary judgment where the plaintiff attempting to challenge validity of settlement based on depression and related medications offered no competent medical evidence going to his capacity); *DeClue v. General Motors Corp.*, 2000 WL 1472856 (D. Kansas 2000) (collecting federal and state cases on this issue); *Bush v. Bush*, 2014 WL 4056060 (Mich. App. 2014) (affirming trial court's rejection of challenge to settlement agreement based on depression and anxiety due to lack of competent medical evidence showing that the plaintiff was unable to understand the nature and effect of the settlement.).

Here, Gong has not submitted any competent medical evidence that could establish that she lacked the mental capacity to enter into the settlement agreement. Indeed, Gong has not offered any evidence at all regarding her mental capacity or alleged conditions, not even an affidavit from her regarding her diagnoses, treatments, or medications.

C.     **Failure To Pay Consideration**

The University's Motion for Summary Judgment anticipates that Gong may argue the

Release is invalid because it has not paid the money owed to Gong, and asserts that any such

argument would fail because:

> The University has not breached the settlement agreement. Nonperformance does
> not amount to breach when the time for performance has not accrued. *Woody v.
> Tamer*, 158 Mich.App. 764, 772; 405 NW2d 213 (1987), citing Restatement
> Contracts, 2d, § 235, Comment b, p 212. A settlement cannot be set aside for
> nonperformance if performance has not come due. Although the University has
> not yet paid Plaintiff the $41,000, the obligation to pay has not yet accrued
> because the obligation to pay was conditioned on Plaintiff tendering her W-9.
> (Settlement Agreement, p. 1). Because the University has not received the W-9,
> performance has not come due, and the University has not breached the settlement
> agreement. The University has repeatedly affirmed that it will honor the
> settlement agreement and tender payment upon receipt of Plaintiff's W-9. Thus,
> Plaintiff has no basis for rescinding the settlement agreement, and remains bound
> by its terms.

(Def.'s Br. at 13).

Construing her response very broadly, Gong suggests that the release is invalid because

she has not received the consideration from the University. (Pl.'s Br. at 32, asserting that the

University "has never paid her a penny" that "she has not received any pay out from defendants.

Ms. Gong remains on 'Empty Hands.'"). Gong's brief, however, does not even respond to the

University's argument that its obligation has not come due because Gong has failed to return the

W-9.

### D.       Revocation

Finally, Gong asserts that she revoked the release (Pl.'s Br. at 32, stating "Plaintiff

revoked her signing of the agreement") or that she wanted her counsel to revoke it. (Pl.'s Br. at

7, stating Gong "wanted Mr. Wahl to revoke it as soon as July 9, 2013" and at 25, asserting that

"Mr. Wahl was selfish by not sending a written notice to revoke the July 8, signing (if it was

true).").

The Release that Gong agreed to and signed on July 8, 2013, provided that Gong could revoke the lease within seven days of signing it, but that she had to do so in a writing delivered to the University:

> Yusong Gong acknowledges that she has been advised to consult with an attorney and has consulted with an attorney prior to executing this Release. Yusong Gong represents and acknowledges that before signing this Release she read the same, consisting of five pages, that she fully understands its terms, content and effect, and that she has relied fully and completely on her own judgment and on the advice of her attorney in executing this Release. Yusong Gong further acknowledges that she was given a period of twenty-one (21) days within which to consider this Release before signing it. *Yusong Gong understands that during the seven day period following her signature on this Release she may revoke this Release, provided that such revocation is in writing and delivered to the University of Michigan Officer of General Counsel prior to the expiration of the seven day period*, and this Release will not become effective or enforceable until the seven day revocation period has expired without her exercise of the right to revoke.

(Release at 3-4) (emphasis added).

In support of its motion, the University notes that Gong has no evidence to establish that she revoked the Release in the manner provided for in the Release. In addition, the University has provided the Court with evidence to demonstrate that neither Gong nor her counsel submitted a written notice to the Officer of the General Counsel revoking the settlement within the seven-day period after July 8, 2013. (*See* Def.'s Exs. I & J, Affidavits of Daniel Tukel and Jennifer Traver).

As Gong has provided no evidence to establish that she or her Counsel revoked the release in the manner set forth in the Release, this challenge also fails.

### E. The Release Provision That Gong Remains Ineligible For Rehire Does Not Invalidate The Release.

Although Gong has not raised this as a defense to the Release, the University's motion

preemptively argues that the prohibition on future employment in the Release does not invalidate it. Gong's Response brief does not address this legal argument. The Court agrees with the University.

Gong's claims of discriminatory/retaliatory failure to rehire are barred by the Release because such claims did not arise independently after Gong's termination but were instead inextricably linked to the wrongful termination claims Gong expressly waived in the Release. *See Kellogg Co. v. Sabhlok*, 471 F.3d 629, 634-35 (6th Cir. 2006). Like the plaintiff in that case, Gong's failure to rehire claim is "simply an attempt to revive claims [she was] paid to release." *Id*. at 634. In other words, where an employee gives up her right to sue for discrimination as to her termination, and acknowledges that the employer has no obligation to rehire her, that employee cannot resurrect the released claims by reapplying for employment. *Id*. at 635.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED and this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

Dated: December 14, 2018                          s/Sean F. Cox
                                                  Sean F. Cox
                                                  U. S. District Judge


I hereby certify that on December 14, 2018, the foregoing document was served on counsel of record via electronic means and upon Yusong Gong via First Class mail at the address below:

Yusong Gong
4937 N. Ridgeside Circle
Ann Arbor, MI 48105

                                                  s/J. McCoy
                                                  Case Manager